UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10117-RWZ |
| | ) | |
| **DARREN FRANKLIN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### GOVERNMENT'S MOTION FOR PROTECTIVE ORDER
### CONCERNING SUPPRESSION HEARING

The United States of America, by and through the undersigned counsel, moves for a protective order to prevent a police officer's sixteen year old nephew from being subpoenaed to testify at Defendant Darren Franklin's suppression hearing. In support of its motion, the government sets forth the following:

1. Robert Fratalia is a Boston Police Detective who participated in the investigation of drug-trafficking and related offenses in the Warren Gardens area of Roxbury (Boston), Massachusetts which resulted in the federal prosecution of 17 individuals (and the state prosecution of another 8 individuals), including Darren Franklin.

2. Detective Fratalia's sixteen-year-old nephew, who is currently a sophomore in high school, had, unbeknownst to Detective Fratalia, written a school essay about having done a "ride-along" with his uncle, Detective Fratalia, on the night of April 14-15, 2004. The essay, dated five months later, concerned the nephew's personal observations and impressions of the surveillance and other events leading to and following the arrest of Darren Franklin.

3. The government disclosed a redacted copy of the nephew's essay (attached as Exhibit A) to defense counsel in anticipation of the hearing on Darren Franklin's motion to suppress evidence seized during searches conducted in the wake of his arrest on April 14-15, 2004. At the

time, the government explained that, if the defense counsel sought to subpoena the nephew, he need only notify the government and the government would treat the notification as a subpoena and would ensure the nephew's presence in court. The government also reserved its right to move to quash the virtual "subpoena."

4.  Defense counsel has indicated that he intends to call the nephew as a witness at the second day of the suppression hearing. The government now moves for a protective order on the ground that it is unreasonable for the defense to insist on the nephew's testimony where it would be cumulative of other freely available evidence and would add nothing to the proceedings. See Fed. R. Crim. P. 17(c)(2); Stern v. U.S. Dis. Court for Dist. of Mass., 214 F.3d 4, 16 (1st Cir. 1994) (judge has power to quash subpoena if compliance would be unreasonable or oppressive).

5.  There are very few differences between the contemporaneous report that Detective Fratalia wrote and the essay that his nephew wrote five months later concerning the events of April 14-15, 2004. Further, any discrepancies are immaterial to the suppression hearing.

6.  For example, several events which are documented in Detective Fratalia's report also are mentioned in his nephew's school essay. In the second through fourth paragraphs of his report, Detective Fratalia described a person resembling Franklin as getting into a "white colored mid size sedan" which arrived in the area at approximately 11:30 p.m. and which arrived and dropped that individual off approximately "twenty minutes to one half hour later." Similarly, in his school essay, Detective Fratalia's nephew wrote in the fourth paragraph that a man "fit[ting] the physical description of our target came walking down the stairs to a waiting car" and that that same individual "headed back up the stairs to his building" after "the same white, late 80s, Nissan Maxima" had returned to the complex. The only difference between these two accounts is that, Detective

2

Fratalia's nephew, writing some five months or more after the events in question, wrote that the car first appeared "[a]t about 12:30 - 1:00 am" and returned "[a]bout an hour later. . . ." However, these minor differences in timing are neither relevant nor material to the events at issue in Franklin's motion to suppress or, for that matter, to any eventual trial of the charges against Franklin.

       7.       In the fifth paragraph of his report, Detective Fratalia noted that, at approximately 1:25 a.m. on the morning of April 15, a person resembling Franklin was "observed carrying a light colored shopping bag in his left hand" and placing the bag into the trunk of Franklin's blue Ford Taurus. This individual also was seen getting into Franklin's car, starting it, turning on the headlights and moving the parked car forward slightly before turning off the lights, and sitting in the car for a few minutes before exiting the car and returning back in the direction of the building in which his girlfriend Fania Hemingway lived. Similarly, in the fifth and sixth paragraphs of his school essay, Detective Fratalia's nephew reported that the man who had returned in the white Nissan Maxima "walked back out to the parking lot . . . carrying a white paper shopping bag, that clearly had something in it"; that the man got into his Ford Taurus, turned on the lights, opened the trunk, put the shopping bag in the trunk, closed the trunk, got back in the car, started the car, and moved the car slightly forward and backward before exiting the car and returning "back to his building." The nephew's description of these events differs only in the following irrelevant and immaterial respects: he describes this event as happening "[s]hortly after [the individual's] return" to the apartment complex (which, according to his recollection of the pertinent time frames, would place this episode at sometime after 1:30 - 2:00 a.m.); he describes the car in question as a "98 green Ford Taurus"; he describes the individual as turning on the car's lights before opening the trunk; and he describes the individual as moving the car slightly backward as well as forward.

8.  In paragraph eight of his report, Detective Fratalia indicates (as reported to him by others) that, "[a]t the time of his arrest, Darren Franklin was observed dropping a light blue colored plastic bag to the ground as he exited 159 Pine Grove Drive," which bag, upon examination, was found to contain "a large assortment of ammunition."[1] Similarly, in paragraph nine of his school report, the nephew described Franklin as coming out of the house carrying a plastic bag containing "several hundred rounds of ammunition for several different caliber guns."

9.  In paragraphs eight, nine and thirteen of his report, Detective Fratalia also explained how, following Franklin's arrest, he obtained Fania Hemingway's consent to search her apartment and how he and DEA Task Force Agent George MacLaughlin ("TFA MacLaughlin") conducted that search. TFA MacLaughlin's own report indicates that, during this search, TFA MacLaughlin found a large capacity extended pistol magazine and one forty caliber bullet. In paragraphs eight and nine of his school essay, Detective Fratalia's nephew described an entry team as "mov[ing] in to search the house for anyone or anything else in the apartment" after Franklin, his girlfriend and their children had exited the apartment. Once the entry team had "cleared the apartment, they told the agents in the parking lot that it was safe for us to go into and search more thoroughly (for weapons, ammo and drugs)." Detective Fratalia's nephew makes no mention of his uncle's conversation and subsequent interview of Fania Hemingway, assuming he was even aware of them, and writes only that "[a]s my uncle and another agent searched the bedroom, they found an illegal, high capacity clip for a submachine gun, and one 9mm round." Nevertheless, the government submits that the nephew's failure to record the consent to the search given by Fania Hemingway (either because he

---

[1] The 480 rounds of ammunition found in this blue plastic bag form the basis of the felon-in-possession charge against Franklin. It is important to note that Franklin has **not** moved to suppress this evidence.

was not present for that conversation or because, as a fifteen-year-old boy composing a school essay he did not find it worth reporting) is neither relevant or material in light of Detective Fratalia's own report **and Fania Hemingway's sworn grand jury testimony to the effect that she freely consented to a search of her apartment** (see Exhibit F to the Government's Opposition).[2]

10.     Nor was Detective Fratalia's nephew present when TFA MacLaughlin and DEA Group Supervisor Michael Cashman discussed with Franklin a consent search of Franklin's Ford Taurus. They retrieved from his trunk the bag which Detective Fratalia had seen deposited there the night before and inside the bag the agents found approximately 66 grams of crack cocaine and 91 grams of marijuana. The crack cocaine forms the basis of one of the charges pending against Franklin and Franklin has moved to suppress the search of his car on the grounds that he did not consent to it. Since Detective Fratalia's nephew was not present for the agents' discussion with Franklin about that search, there is no surprise that his school essay indicates only that "[a]t the same time the DEA agent searched the man's car and found a large quantity of cocaine, and an even larger quantity of marijuana in the white shopping bag we saw earlier."

11.     In other words, the nephew's school essay neither adds nor subtracts anything from the factual and legal analysis offered by the parties in connection with the search of Franklin's car (including the consent search, automobile exception and inevitable discovery arguments advanced

---

[2] In any event, in open court at the time of the original oral argument on Franklin's suppression motion, the government indicated that it would not seek to introduce at trial the firearms evidence seized from Fania Hemmingway's apartment, based on Franklin's assurance, also made on the record in open court, that he would not seek to suppress at some later date the hundreds of rounds of ammunition seized from Franklin at the time of his arrest (which are not the subject to the pending suppression motion). Thus, any discrepancies between Detective Fratalia's report and his nephew's essay concerning the search of Fania Hemmingway's apartment are irrelevant.

by the government). The government submits that there are no discrepancies between the school essay, composed at least five months after the events in question, and the pertinent law enforcement reports, which are relevant or material to any matter at issue in connection with the pending suppression motion or likely to be at issue in any future proceedings.

13. There is no basis or justification for dragging a young and impressionable sixteen-year-old into this drug trafficking prosecution by requiring that he be subject to questioning on his school essay. Cross-examination of the nephew under these circumstances would amount to an opportunity to launch a fishing expedition.

For all the foregoing reasons, the government respectfully requests that this Honorable Court grant the Government's Motion for a Protective Order Concerning Suppression Hearing, protecting Detective Fratalia's nephew from being compelled to testify as a witness in connection with his case.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:   /s/ Sabita Singh
PATRICK M. HAMILTON
Assistant U.S. Attorney
SABITA SINGH
Assitant U.S. Attorney
One Courthouse Way
Boston, MA 02130
(617) 748-3100