UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| V. | ) | Criminal No. 04-10117-RWZ |
| | ) | |
| | ) | |
| DARREN FRANKLIN | ) | |

GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS

Now comes the United States, in the above captioned matter and submits this memorandum in opposition to the Defendant's Motion to Dismiss the Indictment on the basis of a violation of the Speedy Trial Act (the "Act").

I.    Relevant Facts

The facts relevant to the defendant's motion to dismiss correspond to the timing of the defendant's filing of a motion to suppress, and the conclusion of the hearing(s) on *that* motion.

The defendant, Darren Franklin, was indicted on April 14, 2004. A superseding indictment was filed on May 27, 2004, and the Defendant was arraigned on June 10, 2004. A second superseding indictment, adding sentencing enhancements, was filed on October 28, 2004 and the Defendant was arraigned on November 15, 2004.

On October 14, 2004, the defendant filed a motion to suppress certain evidence, which included the significant narcotics seized from the trunk of the defendant's vehicle on the date of his April 15, 2004 arrest.  By both the Government and the Defendant's count, all the time between the Defendant's original arraignment and October 14, 2004 had been excluded from calculation for Speedy Trial Act purposes. (See Dkt. 11, 14, 17, 18, Defendant's Motion at p. 5.) The defendant's filing of his motion to suppress stopped the running of the speedy trial clock

until "the *conclusion* of the hearing on, or other prompt disposition of, *such* motion." 18 U.S.C. §3161(h)(1)(F)(emphasis added). The defendant was then indicted in the second superseding indictment on October 28, 2004. The date of the second superseding arraignment is irrelevant to this Court's analysis of the Defendant's instant motion.[1]

The Government filed its reply to the defendant's motion to suppress on November 12, 2004, arguing, in part, that the defendant was not even entitled to an evidentiary hearing on his motion. The defendant filed a response to the Government's opposition on January 7, 2005, arguing for an evidentiary hearing for his motion to suppress. A non-evidentiary hearing on the suppression motion took place on January 20, 2005, which as the defendant states, does not fully appear on the Court's docket. Nevertheless, the hearing on January 20, 2005 centered on the propriety of an evidentiary hearing for the motion to suppress, and the defendant asked for leave to file a supplemental brief to that end on February 3, 2005. In fact, the defendant's January 7, 2005 "Reply", the January 20, 2005 hearing, and the subsequent pleadings by the defendant, together, did not amount to the conclusion to the hearing on his motion to suppress on its merits.[2] Rather, three subsequent hearings on that motion demonstrate, *a fortiori*, that the Court still had not concluded its substantive hearings on the defendant's motion to suppress. In substance, the defendant's "Memorandum in Support of the Defendant's Motion to Suppress"

---

[1] The Court need not decide whether the Speedy Trial Clock was set anew upon the second superseding indictment on October 28, 2004, because the time elapsed prior to it had all been excluded, and the issue is moot because of the stoppage of the clock on account the filing of the defendant's motion to suppress on October 14, 2004.

[2] Taken in the light most favorable to the defendant, these pleadings and arguments could, at best, be considered tantamount to an intervening oral motion for an evidentiary hearing. Even through this lens, it is of no matter to Speedy Trial Act analysis, as the entire litigation of such a *de facto* motion, was a subset of the time excluded on account of the defendant's pending, and only partially-heard, motion to suppress.

filed on February 4, 2005 focused on and ultimately was taken in support of the defendant's interceding requests for an evidentiary hearing. Significantly, there was no other written motion, other than the defendant's motion to suppress, pending at the time.

The court did not grant the defendant an evidentiary hearing on his motion until September 9, 2005. In its order of September 9, 2005, the Court explicitly corroborates its purpose, to provide for an evidentiary hearing in the case -- it was not a ruling on the merits of the motion to suppress. (See Dkt. 38, September 9, 2005 Order, p. 2.) Significantly, during the 187 day delay between February 2005 and September 2005, Defendant made no attempts to advance his motion with the Court.

Following the September 9, 2005 order of the Court, an evidentiary hearing on the defendant's pending motion, the October 14, 2004 motion to suppress, was scheduled to commence on November 3, 2005. The defendant further moved to continue the hearing, and the first part of an evidentiary hearing on the defendant's motion to suppress was held on November 21, 2005.[3] The hearing could not be concluded on November 21, 2005, and it was scheduled to continue on to December 9, 2005. The second part of the hearing was held on December 9, 2005, but could once again not be concluded, and it was further continued on to December 14, 2005. On December 14, 2005, the parties concluded submission of evidence relevant to the Defendant's October 14, 2004 Motion to Suppress. The Court took the matter under advisement, and set a trial date for March 20, 2006. Contrary to Defendant's assertion, December 14, 2005 was the date of the conclusion of the hearing on the defendant's pre-trial motion to suppress, and

---

[3]On November 18, 2005, the Government filed a motion for a protective order concerning a juvenile witness who the defendant had indicated he intended to call as a witness. On December 9, 2005, the Court excused that witness.

consequently, all the time between the filing of his motion to suppress and conclusion of the hearing(s) on *that* motion, was automatically excluded pursuant to 18 U.S.C. §3161(h)(1)(F).

The 30 days following the hearing on the defendant's motion, during which the court has taken this matter under advisement, were then excluded by operation of section 3161(h)(1)(J). Accordingly, pursuant to that section, on January 13, 2006, the Speedy Trial Clock began ticking once again. At that point, all the preceding time elapsed since arraignment had been excluded explicitly by Judge Cohen, and/or automatically because of the Defendant's pre-trial motion to suppress. (See Docket Entries, 11, 14, 17, 18, Defendant's Motion to Dismiss at p.7 ¶15.)

On March 9, 2006 the defendant filed a motion to dismiss the indictment based on the Speedy Trial Act ("STA"), once again stopping the Speedy Trial Clock through operation of Section 3161(h)(1)(F). The time period between January 13, 2006 and March 9, 2006 is 55 days.[4] Consequently, the Defendant's motion is untimely.

II.   Discussion

A.   Applicable Law and Standard of Review

The Speedy Trial Act "commands that a defendant be tried within 70 days of the latest of either the filing of an indictment or information, or the first appearance before a judge or magistrate." Henderson v. United States, 476 U.S. 321, 322, (1986); see 18 U.S.C. § 3161(c)(1). The sanction for failure to adhere to this time limit is severe -- the indictment is dismissed on

---

[4]In a separate motion, the Government has also requested that this time period, from the conclusion of the 30 days following the hearing on the defendant's motion to suppress, until the date that the clock again stopped ticking, be excluded from calculation for purposes of the Speedy Trial Act. *See* Dkt. at 47. The bases included that (1) the issues raised in the motion are *ipso facto* complicated and unusual enough to warrant the Court's deliberation, and (2) because the ends of justice outweigh the best interest of the public and the defendant in a speedy trial . See 18 U.S.C. §§ 3161(h)(8)(A) and (B)(ii,iv).

motion of the defendant.[5]  See 18 U.S.C. § 3162(a)(2).  In determining whether a violation of the Act has occurred, certain "periods of delay shall be excluded in computing the time within which ... the trial ... must commence."  18 U.S.C. § 3161(h).

The following are among the kinds of delays that are properly omitted from this calculation:

> [a]ny period of delay resulting from other proceedings concerning the defendant, including but not limited to--
>
> . . . .
>
> (F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;
>
> . . . .
>
> (J) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.
>
> . . . .
>
> (8)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h).

The Supreme Court has construed subsection 3161(h)(1)(F) as setting forth a two-tiered approach to determining the extent of excludable delay caused by the submission and disposition of pretrial motions.  See Henderson, 476 U.S. at 329-30.  For a pretrial motion on which a hearing is held, the entire period from the filing of the motion to the date of the conclusion of the hearing, regardless of when the hearing is scheduled, plus up to 30 additional

---

[5]The defendant filed such a motion on March 9, 2006.

days while the motion is "under advisement" is automatically excluded.⁶ See id.; United States v. Rodriguez, 63 F.3d 1159, 1163 (1ˢᵗ Cir. 1995). A motion is deemed to be taken under advisement when "'the court receives all the papers it reasonably expects.'" Rodriguez, 63 F.3d at 1163 (quoting Henderson, 476 U.S. at 329). In United States v. Staula, 80 F.3d 596 (1st Cir. 1996), the First Circuit held that "a hearing is any on-the-record colloquy in which the district court hears the arguments of counsel and considers those arguments prior to deciding a pending motion." Id. at 602. With regard to the defendant's motion to suppress, at least four hearings were held, the most recent occurring on December 14, 2005.

Therefore, the entire time from October 14, 2004 until December 14, 2005 was excluded prior to the Court taking the matter of the defendant's motion to suppress under advisement.⁷ Unlike some other time exclusions under the Act, subsection (h)(1)(F) does not require a specific finding on the record for the basis of exclusion of time, nor a finding of reasonableness. See United States v. Maxwell, 351 F.3d 35, 38 (1ˢᵗ Cir. 2003).

The time up to the day of the conclusion of a hearing on the motion is excludable even if the Court were to consider this delay "overlong, inexplicable, or unreasonable." Staula, 80 F.3d at 600; see Henderson v. United States, 476 U.S. 312, 329-330 (1986) ("Congress intended subsection (F) to exclude from the Speedy Trial Act's 70-day limitation all time between filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is 'reasonably necessary'"); see, also, United States v. McAfee, 808 F.2d 862, 863-864

---

⁶By contrast, although inapplicable in the present case, when "motions that require no hearing" are involved, time is tolled only until the "prompt disposition" of the motion, which ordinarily cannot exceed the 30-day "under advisement" period.

⁷Time may also be properly excluded to account for the filing of additional submissions necessary for the disposition of a motion or where the motion presents especially complicated issues. See Henderson, 476 U.S. at 331.

(1st Cir. 1986)(excluding one year delay between filing of motions and hearing).

A District Court's denial of a motion to dismiss based upon the Speedy Trial Act is reviewed *de novo* as to legal rulings and for clear error as to factual findings. United States v. Scantleberry-Frank, 158 F/3d 612, 614 (1st Cir. 1998).

In this case, as mutually accounted, the Magistrate Judge had excluded all the period up to and including October 19, 2004. On October 14, 2004, the Defendant filed a motion to suppress, thereby stopping the clock for a superseding basis under the Act, by operation of 3161(h)(1)(F). As of that date, the defendant's one and only motion to suppress evidence has remained pending. The court did scheduled a non-evidentiary hearing on the defendant's motion to suppress[8], and it is without dispute that the period up to the date of that first hearing related to the motion to suppress is properly excluded. However, the January 20, 2005 hearing was not the definitive conclusory hearing on the defendant's motion to suppress – indeed, three later hearings on that issue bear this out. Taken in proper context, prompted by the Government's opposition to his motion to suppress, the Defendant argued for an evidentiary hearing through what he dubbed, a "Reply Memorandum" filed on January 7, 2005, and supplemented on February 4, 2005.[9] Through any lens, the January 20, 2005 hearing did not

---

[8]A "hearing" would be satisfied by any "give-and-take among counsel and the court, notwithstanding its relative brevity." Staula, 80 F.3d at 601.

[9]If one chose to consider the amalgam of these proceedings a '*de facto*' motion, it is of little matter in this analysis, as it crystallizes the fact that the motion to suppress remained pending. The Court's September 9, 2005 order is docketed as granting defendant's "motion for an evidentiary hearing as to the search of his vehicle". Through this lens, this separate pre-trial motion was being litigated while another motion remained pending, and thereby time was being excluded. If not considered a motion, then the Court's September 9, 2005 order must be treated as an order for supplemental information in order to decide the motion to suppress on its merits. Such a request, *ipso facto*, means that the Court had not yet taken the motion to suppress under advisement, and thereby the hearing on the motion could not have been complete and the


amount to the "conclusion of the hearing" on the defendant's motion to suppress. See 18 U.S.C. §3161(h)(1)(J). In fact, as cited above, the docket and the Court's September 9, 2005 order corroborates this sequence.

    A.    <u>The Speedy Trial Act Clock Has Not Run</u>

As a factual and legal matter, the Speedy Trial Act clock was suspended from October 14, 2004 through December 14, 2005. The Defendant's version of the relevant facts is a gloss on the actual time-line following the filing of the defendant's motion to suppress. The actual time-line starts with stoppage of the clock upon the October 14, 2004 filing of a motion to suppress. Then, while the clock was already stopped, the Defendant filed interceding Replies and Memoranda in order to press for an evidentiary hearing, which narrow issue was resolved on September 9, 2005. The motion to suppress still remained unresolved. That entire period remained excluded by virtue of the still-pending and unheard motion to suppress.[10] The Defendant conveniently segregates the hearing of January 20, 2005 as the conclusory hearing on the defendant's October 14, 2004 motion. However, this view is irreconcilable with the record of the hearing and pleadings at the time, of subsequent hearings, and the narrowness of the issues addressed by the Court's September 9, 2005 order. The defendant fails to consider the very reasons for which the winter 2005 hearings were actually held – the fact that the only

---

Section 3161(h)(1)(J) analysis could not apply.

    [10]If the court delays the ruling on a motion until trial pending additional information or to see how evidence emerges, then the entire time period between the filing of the motion and the trial can be excluded. See <u>United States v. Riley</u>, 991 F.2d 120, 123-24 (4th Cir. 1993) (holding that the time period for a motion to suppress that was delayed until trial is excludable under subsection (F)); <u>United States v. Santoyo</u>, 890 F.2d 726, 728 (5th Cir. 1989) (holding period between motion and trial excludable when motion remained pending until trial date); <u>United States v. Harris</u>, 376 F.3d 1282, 1289 (11th Cir. 2004) (holding that the time from the filing of pretrial motions that were held until the time of trial is excluded).

motion pending was his October 14, 2004 motion to suppress. Moreover, allowance of his motion would only lead to the perverse consequence of delaying a trial on the crimes alleged.

Hence, only the delay between January 13, 2006 (30 days following the conclusion of the hearings on the motion) and March 9, 2006 (the day of the filing of the instant motion) can be counted for Speedy Trial Act purposes. These 55 days do not give rise to a violation. Regardless of that fact, because of the complicated and unusual nature of the proceedings in this case, the circumstances of such delay, and reasons stated in this motion and in the pending motion for excludable delay, these days may be, and should be excluded by the Court pursuant to 18 U.S.C. §3161(h)(8)(A).

The Defendant's legal authority is also distinguishable. The Defendant's cite to United States v. Scott, 270 F.3d 30 (1st Cir. 2001) is inapposite. In Scott, the First Circuit held "[o]nce the additional filings are submitted, and a hearing is not required, the court must decide promptly, within 30 days." Id. At 56. Because the First Circuit's decision contemplated motions that do not require hearings, it applied subsection (J). Motions which require a hearing, by their very nature in being more contentious and complicated, logically require different timing restrictions under the Speedy Trial Act, which are made explicit in subsection (F). The Defendant also cites to United States v. Janik, 723 F.2d 537 (7th Cir. 1983), where the District court applied subsection (J) to a motion to suppress, stating that 98 days were not excludable when the court took the matter under advisement, and then 98 days later asked for more testimony. That case, decided by the Seventh Circuit in 1983, involved numerous additional issues related to the Speedy Trial Act, and preceded the Supreme Court's clarification in Henderson, which is now the controlling law on this matter. Moreover, as a factual matter in the Janik case, the Court *re-opened* the hearing on the motion to suppress rather than, as occurred

in this case, decided the intervening issue of whether an evidentiary hearing was required, prior to conducting the evidentiary hearings. The holding by the Seventh Circuit in <u>Janik</u> admonished the District Court against a practice of re-opening a hearing well after the evidence is concluded in order to rehabilitate a Speedy Trial Act violation. <u>Janik</u>, 723 F.2d at 544. That is simply not the factual basis in this case. Because <u>Henderson</u> and its progeny clarified much of the law as it pertains to subsections (F) and (J), <u>Janik</u> is unpersuasive in this circuit, and is factually distinct.

      B.      <u>Even if the clock had technically run, the defendant waived the enforcement provisions for the 2005 delay</u>

A defendant generally may not elect to waive the protections of the Act. The reason is that the public has at least as great an interest as the defendant in an expeditious criminal trial. <u>See</u> <u>United States v. Hastings</u>, 847 F.2d 920, 923 (1st Cir. 1988) (noting that society has a "general interest in resolving the guilt or innocence of those accused of crime rapidly (consistent with fundamental fairness) and punishing those found to be guilty").

In <u>United States v. Pringle</u>, 751 F.2d 419 (1st Cir. 1984), the First Circuit crafted a limited "unclean hands" exception to this rule. Cf. <u>United States v. Gambino</u>, 59 F.3d 353, 360 (2d Cir. 1995) ("[T]hose courts recognizing the [<u>Pringle</u>] exception have placed tight restrictions on the finding of waiver."). In <u>Pringle</u>, defendants had sought to continue the trial, declaring that "all defendants waive[d] their rights to a speedy trial." 751 F.2d at 433. Defendants later moved to dismiss the indictment based on the delay that ensued in selecting a new trial date. The district court denied the motion and the First Circuit affirmed, holding, *inter alia*, that although a defendant cannot waive the right to speedy trial, he or she cannot "lull[ ] the court and

prosecution into a false sense of security only to turn around later and use the waiver-induced leisurely pace of the case as grounds for dismissal." Id. at 434. The Court went on to explain that "[d]efense counsel may not simultaneously use the Act as a sword and a shield," by requesting continuances and then urging dismissal based on those continuances. 751 F.2d at 434. See United States v. Keith, 42 F.3d 234, 238 (4th Cir. 1994) (although c.f. Pringle, 751 F.2d at 434 (mere failure to object to a delay does not constitute "work[ing] both sides of the street").

Although the Defendant did not request the 187 day delay in 2005, it was his intervening request in pursuit of his motion to suppress, which did lead to that delay. Ironically, had the Court denied the defendant's January 7, 2005 request for an evidentiary hearing on his motion to suppress, the Defendant would be much better situated, at least superficially, to make his technical argument that the conclusion of the hearing on his motion to suppress occurred on January 20, 2005. Similarly, had the defendant filed the instant motion during the 187 days while he awaited the Court's ruling on his request for an evidentiary hearing, the defendant could at least superficially argue that the hearing had been concluded on his motion and the court had taken his motion to suppress under advisement. However, since he did not, and the subsequent fact of continued hearings in the matter bear out the fact that the motion to suppress hearing had not been concluded, the defendant cannot now claim that the 2005 delay was the court's improper delay *after* taking the motion under advisement.

    C.    Dismissal Without Prejudice

If the Court accedes to the defendant's creative accounting of time and finds a Speedy Trial violation in this case, the Court should dismiss the indictment without prejudice and after providing due opportunity to be heard. In light of the gravity of his offenses, it is the Government's intent to re-charge the Defendant upon such a finding. The determination to

dismiss with or without prejudice is committed in the first instance to the discretion of the district court, guided by the factors specified in the statute, including (1) the seriousness of the offenses; (2) the circumstances leading to the delay; (3) the impact reprosecution would have on the administration of justice and the enforcement of the Speedy Trial Act; and (4) other factors, including whether the delay resulted in actual prejudice to the defendant. 18 U.S.C. 3162(a)(2); see United States v. Taylor, 487 U.S. 326, 334-42 (1988); ("the Act does not require dismissal with prejudice for every violation. Dismissal without prejudice is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds."); United States v. Barnes, 159 F.3d 4, 18 (1st Cir. 1998); United States v. Scott, 270 F.3d 30, 58 (1st Cir. 2001). A District Court must carefully express its decision whether or not to bar reprosecution in terms of the guidelines specified by Congress. Taylor, 487 U.S. at 343.

    1.    The seriousness of the offense

As to the first factor, clearly the severity of the offenses alleged against the defendant in this case strongly favor dismissal without prejudice. "[T]he graver the crimes, the greater the insult to societal interests if the charges are dropped, once and for all, without a meaningful determination of guilt or innocence." Hastings, 847 F.2d at 925. It is beyond argument that offenses which carry a sentence of mandatory life imprisonment is a serious offense. The "administration of justice" requires that there be a determination of guilt or innocence and a full prosecution of this matter.

    2.    The circumstances of the delay

Second, the circumstances of the delay further support any dismissal being without prejudice. As in Barnes, "[t]here is nothing in the record to suggest that prosecutorial

misconduct ... caused the 70-day deadline to be exceeded ..." 159 F.3d at 17.  See, also, Scott, 270 F.3d at 58 ("the facts and circumstances of the delay do not show any bad faith on the part of the government").  Where "the actual speedy trial violation resulted solely from neglect rather than intentional misconduct, that circumstance tips ever so slightly in favor of dismissal without prejudice." Barnes, 159 F.3d 17.  Similarly, in Scott, the Court of Appeals for the First Circuit, after considering all the factors, determined that "it is quite clear that dismissal should be without prejudice," and saw no reason to remand the matter to the district court on that issue. 270 F.3d at 58.

      Moreover, in Barnes, the court found that the defendant shared part of the blame because the defendant "could have pushed the proceedings along at various crucial junctures, but chose not to.  She did not behave like a defendant who wanted her day in court *posthaste*.  Instead, she requested several continuances." Id.  Similarly, in this case, even the defendant is arguing that Court delayed ruling on his motion to suppress, rather than any malfeasance from the government.  This claim must be taken within the context that the defendant did not even file a motion to suppress until pressed by the Magistrate Judge, and then sought to submit supplemental memoranda on subordinate issues and filed a motion to continue during the pendency of the motion. Significantly, the defendant never pressed the issue of a ruling from the Court while it was considering his own motion, and yet now he claims relief for the same.  Only on the eve of trial, months after such a claim had matured under his version of the facts, does the defendant file this motion. Even under the defendant's version of the facts, the government did not cause a violation of the defendant's rights to a speedy trial under the Act.  As in Barnes, the defendant, "rather than immediately asserting her speedy trial rights once the violation occurred, she consented to one additional lengthy continuance [and] ... never raised the speedy trial claim until the last possible moment ..." Id.  These actions and inactions by the defendant

-13-

should weigh heavily against a dismissal with prejudice.  Id.

       3.       Effect on the administration of justice and enforcement of the act

The effect reprosecution would have on the administration of justice and enforcement of the Speedy Trial Act also does not call for barring reprosecution.  First, the Barnes case involved the question of whether a defendant should be tried a second time, that is, dismissal without prejudice would have resulted in a second trial.  In this case, there has not yet been a trial; therefore, no consideration of a waste of judicial resources is implicated.  Little, if any, additional judicial resources will be expended if the dismissal is without prejudice and the case re-indicted, than would have been expended had this case continued from this point forward without a dismissal.  Second, the defendant is no better or worse off to press his motion, or defend his case at trial in a subsequent prosecution.  Third, all of the subject delay that has occurred since the arraignment is attributable to the defendant's motion to suppress.  Finally, the alleged crimes, which go to the heart of the administration of justice, should be fully litigated, while nothing would be gained by barring reprosecution of the defendant.  In fact, a dismissal with prejudice would have a significant negative impact on the administration of justice and the view of the public concerning the process, if a defendant who allegedly committed such a serious crime is able to escape trial on a "technicality", especially when it is not even a technically sound basis.

       4.       Prejudice

Fourth, there is no prejudice to the defendant.  There is nothing about the procedural history of this case that has prevented defendant from pursuing a vigorous defense.  To dismiss the charges with prejudice under the circumstances of this case would not serve the interests of the fair administration of justice, in fact, to do so would cause severe harm to the administration of justice.

III.  Conclusion

This Court should DENY the Defendant's Motion to Dismiss, and alternatively, if the Court should dismiss the indictment, such dismissal should be without prejudice. A HEARING on this matter is requested.

        Respectfully submitted,

        MICHAEL J. SULLIVAN
        United States Attorney

By:   /s/ Aloke Chakravarty
      ALOKE CHAKRAVARTY
      SABITA SINGH
      ASSISTANT U.S. ATTORNEYS

## CERTIFICATE OF SERVICE

I hereby certify that I have discussed this matter with counsel, and this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 14, 2006.

      /s/ Aloke Chakravarty
     ALOKE CHAKRAVARTY
     ASSISTANT UNITED STATES ATTORNEY