UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 04-10117-RWZ

UNITED STATES OF AMERICA

v.

DARREN FRANKLIN

MEMORANDUM OF DECISION

March 15, 2006

ZOBEL, D.J.

Defendant Darren Franklin was indicted in April 2004 and is scheduled to go to trial on March 20, 2006. Defendant moves to suppress evidence seized from the trunk of his car during a warrantless search conducted immediately after his arrest on April 15, 2004.[1] The government contends that the search (1) was conducted with defendant's consent, and (2) in the alternative, falls within the automobile exception to the Warrant Clause of the Fourth Amendment. Defendant disputes both claims. Based upon the parties' papers and an evidentiary hearing that was held over the course of three days, I find the following facts.

I.   Facts

On the night of April 14, 2004, Boston Police Detective Robert Fratalia, and DEA Agents George MacLaughlin and Mike Cashman were assigned to monitor defendant's

---

[1] Defendant originally sought to suppress evidence seized both from his apartment and from his car, but the government will not seek to introduce the apartment evidence at trial. (Gov't Opp. 21 n.11; Def.'s Reply Br. 1 n.1). Accordingly, to the extent the motion seeks to suppress evidence seized from the apartment, it is denied as moot.

residence, as part of a large-scale series of arrests. At the time, defendant lived at 159 Pine Grove Drive, in Brockton, Massachusetts, with Fania Hemingway and her two small children. Detective Fratalia was in a vehicle alone, parked in the parking lot in the back of the complex near defendant's blue Ford Taurus, while Agents MacLaughlin and Cashman were in another vehicle, and moved around in the parking lot. All three were able to observe the back of 159 Pine Grove.

At approximately 11:30 p.m., a male matching defendant's description emerged from the apartment building and got into a white sedan that had just arrived and that then drove away. Fratalia notified MacLaughlin and Cashman, who attempted to follow the vehicle, though they subsequently lost it in traffic. Approximately half an hour later, Fratalia saw the same vehicle return, and the same individual got out and went back inside the apartment building.

Approximately forty-five minutes to one hour later, the same person emerged once again, carrying a white shopping bag with handles. He placed the bag in the trunk of defendant's car, got into the car, started the car, turned the lights on, and moved the car forward a few inches. The person remained in the car for a few minutes, then turned the engine off and returned to the apartment building. A short while later, a tow truck patrolling the parking lot stopped by defendant's car, and someone inside 159 Pine Grove Drive opened the curtains and looked down; when the tow truck left, the person in the window disappeared.

At approximately 5:30 a.m. on the morning of April 15, 2004, law enforcement officers contacted defendant by telephone and persuaded him to come outside. He did so peacefully, surrendering a plastic bag containing a large amount of ammunition to a

SWAT team that had surrounded the back entrance to 159 Pine Grove Drive. He was immediately placed under arrest. Defendant was eventually moved down to the parking lot, where agents MacLaughlin and Cashman approached him and gave defendant a Miranda warning. At this point, the agents began questioning defendant. What was said next is a matter of dispute.

One of the agents informed defendant that he had been observed placing a bag in the trunk of the car and asked if they could search the car. Instead of responding directly, defendant explained that the car was registered in his mother's name, but that he was listed on the insurance papers and that he regularly drove the car. Defendant was then asked what he was doing when he came out to the car. Defendant said that he had come outside to smoke marijuana in the car. Defendant was then asked what was in the shopping bag that he had placed in the trunk. According to the agents, defendant said there was "a little weed" in the bag. (Dec. 9, 2005 Tr. 15, 32). Upon further questioning, defendant told the agents that he had heard that his "people were disappearing off the street that night," and that he had brought the marijuana outside so that, in the event of his own arrest, no illegal substances would be discovered in Ms. Hemingway's apartment because she was on probation. (Id. at 16, 32-33). Defendant further explained that he had brought the bag of ammunition outside with him that morning for the same reason. The agents then asked defendant again whether they could search the car. Defendant—according to both agents—said "Yeah, do what you gotta do." (Id. at 17).

The agents interpreted defendant's remark as providing them with consent to search the car. No consent form was executed, however, even though consent forms

were available at the scene, as is apparent from the fact that Ms. Hemingway executed a form when agents asked to search her apartment. Agent MacLaughlin briefly left defendant with Cashman, returned a short while later with car keys obtained from Ms. Hemingway, and the two agents proceeded to search the car. Inside the trunk they found the shopping bag, which contained 66 grams of crack cocaine and 91 grams of marijuana. During this process, defendant was nearby, but not directly beside the vehicle. After completing the search, the agents took defendant inside the apartment, where Ms. Hemingway had already consented to a search of the apartment. Agent MacLaughlin asked defendant whether he would consent to a search of his part of the apartment, to which Franklin again responded "Yeah, go do what you got to do." (Dec. 9, 2005 Tr. 65). The search was conducted and defendant was eventually transported to the police station.

II.   Discussion

The government argues first that the search was conducted pursuant to the well-established consent exception to the Fourth Amendment's warrant requirement. See United States v. Melendez, 301 F.3d 27, 32 (1st Cir. 2002). The government bears the burden of proof. Id. Consent may be given by words, gesture, or conduct, see Robbins v. MacKenzie, 364 F.2d 45, 48-49 (1st Cir. 1966), and is assessed by looking at the totality of the circumstances, Melendez, 301 F.3d at 32. In many cases, the dispute is not over whether consent was given, but whether it was voluntary. E.g., id. In this case, however, the parties dispute whether or not defendant actually gave consent. For the following reasons, I find that he did and that it was voluntary.

In general, I find the testimony of the agents more credible than that of defendant. Both Agents MacLaughlin and Cashman credibly and consistently testified that defendant said "yeah, do what you gotta do" when asked for consent to search the car. Taken at face value, these words indicated that defendant consented to the search. It was, moreover, objectively reasonable for the agents to interpret this remark as an affirmative answer given defendant's generally cooperative attitude, as to which all three law enforcement officers testified. Defendant voluntarily surrendered while carrying a large amount of ammunition, suggesting that he was willing to bear the consequences of being found with contraband. Defendant also told the agents that he was aware of recent arrests, and that he had placed marijuana in the car and had carried the ammunition out of the apartment to protect Ms. Hemingway in the event of an arrest. Although he denies making such statements, I credit the agents' testimony and find that these statements, when viewed in context, indicated that defendant was in a cooperative state of mind and was willing to engage in open discussion with the agents.

It is worth noting that the parties' stories are not entirely inconsistent. Both the agents and defendant testified that, when asked whether he would consent to the search, defendant responded with some variation on the phrase "do what you gotta do." Defendant argues that he first refused the request and then made this statement, without the prefatory "Yeah," when the agents told him they would obtain a search warrant if he did not consent. The agents deny that they ever made such a threat. In other words, the difference between the two accounts is that in the agents' version, no search warrant was mentioned, let alone threatened, and defendant said "Yeah, do

what you gotta do," instead of simply "Do what you gotta do." In the end, I credit the agents' version, not only based on their testimony at the evidentiary hearing, and the consistency of their accounts, but also based on the other facts indicating that at the time of his arrest, defendant was seemingly resigned to his fate and cooperated with law enforcement throughout. Accordingly, I find that the search fell within the consent exception to the Fourth Amendment.

In the alternative, the evidence is admissible because it falls within the automobile exception. Under that exception, law enforcement may conduct a valid warrantless search of a motor vehicle when they have probable cause to believe that the vehicle "contains contraband or other evidence of criminal activity." United States v. McCoy, 977 F.2d 706, 710 (1st Cir. 1992). Probable cause is the only prerequisite, since the automobile exception has been found to apply even where exigent circumstances are lacking due to the inherent mobility and reduced expectation of privacy that are associated with motor vehicles. See United States v. Panitz, 907 F.2d 1267, 1271 (1st Cir. 1990). In this case, the agents had ample probable cause to conduct the search. Defendant, who was being surveilled as part of a large-scale drug investigation, was observed placing a bag in the trunk of the car in the middle of the night, starting the car and moving it slightly, and then returning to the apartment. When a tow truck paused near the parked car, someone in the apartment shared by defendant and Ms. Hemingway was observed looking out the window until the tow truck departed. When defendant emerged from the apartment, he was carrying a bag containing a large amount of ammunition. And when defendant was asked what was inside the shopping bag that he had placed in the trunk of the car, he said—according

to the agents, whose testimony I credit—"a little weed." These circumstances provided ample probable cause for the agents to search the car. Indeed, even if I credit defendant's testimony—that he told agents that the bag contained sneakers—I still find that the agents had sufficient probable cause to search the car and the contents of the bag in the trunk.

III. Conclusion

Accordingly, defendant's motion to suppress (#21 on the docket) is denied. The government's motion for a protective order (#41 on the docket) is denied as moot.

March 15, 2006
DATE

RYA W. ZOBEL
UNITED STATES DISTRICT JUDGE